IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | No. 33193-8-III |
| James Donald Cudmore and Gregg L. Belt, | ) | |
| | ) | |
| | ) | |
| JOHN C. BOLLIGER, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant, | ) | |
| v. | ) | |
| | ) | |
| JAMES DONALD CUDMORE, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — This appeal addresses a single issue: attorney John Bolliger's

challenge to a trial court order that disqualified him from representing Gregg Belt in a

different appeal, *Cudmore v. Belt*, case no. 32327-7-III, (Wash. Ct. App.) (hereafter the

"Belt appeal"). Following the disqualification order, a new attorney appeared for Mr.

Belt in the Belt appeal, a resolution was quickly reached, and the appeal was withdrawn.

Before briefs were filed in this appeal, the court initiated a motion to determine the

appealability of the disqualification order.[1] After hearing from the parties, our

commissioner determined that a lawyer may be aggrieved by an order of disqualification

---

[1] *See* Letter from Renee Townsley, Clerk of Court, Wash. Court of Appeals, to John Bolliger, attorney, John Bolliger Law Office (Apr. 28, 2015), *In re Cudmore*, No. 33193-8-III (Wash. Ct. App.).

that includes a formal finding of misconduct. Following that ruling, the parties filed their briefs.

Only one of Mr. Bolliger's assignments of error on appeal asks us to reverse what is arguably a formal finding of a violation of the rules of professional conduct. Because the finding of a violation was supported by substantial evidence and issues raised by the other two assignments of error are moot, we affirm the relevant finding and conclusions of the court's disqualification order and otherwise dismiss the appeal.[2]

## FACTS AND PROCEDURAL BACKGROUND

On July 2, 2013, then 84-year-old Donald Cudmore visited attorney John Bolliger with the stated intention of altering his estate plan. This was the first time that Mr. Cudmore had sought legal advice from Mr. Bollinger. A friend of Mr. Cudmore's, Dona Belt, had both referred him to Mr. Bolliger and arranged the appointment. Mr. Cudmore lived at The Manor at Canyon Lakes (The Manor), an assisted living center, and Gregg Belt, Dona Belt's son, transported Mr. Cudmore to or from The Manor and Mr. Bolliger's office for appointments in early July.

---

[2] We deny Mr. Bolliger's January 26, 2016 Motion for this Appeal, and its 2 Other "Linked" Appeals, to be Analyzed and Decided at the Same Time. The relief requested would unnecessarily delay the disposition of this appeal, something our commissioner could not have anticipated when, in June 2014, she expressed the expectation that Mr. Bolliger's several appeals would be considered and decided at the same time.

Tim Lamberson, who is Mr. Cudmore's stepson and served as his attorney-in-fact under a power of attorney executed in 2008, learned that Ms. Belt was accompanying Mr. Cudmore to financial institutions and to Mr. Bolliger's office. He notified Abbie Elliott, a bookkeeper for The Manor, of Ms. Belt "and her possible intentions." Clerk's Papers (CP) at 297. On July 8, Ms. Elliott became concerned when Mr. Belt arrived at The Manor and, from her perspective, too persistently proceeded to Mr. Cudmore's room to transport him to a meeting with Mr. Bolliger. She called police, who arrived and spoke to Mr. Belt. After calling Mr. Bolliger and confirming that Mr. Belt was providing Mr. Cudmore with transportation to an appointment, the officers did not interfere.

On July 11, Mr. Lamberson petitioned for a vulnerable adult protection order under RCW 74.34.110 seeking to restrain Mr. Belt from having contact with Mr. Cudmore. In addition to his own handwritten statement of concerns, Mr. Lamberson attached an unsworn, unsigned statement from Ms. Elliott; a copy of the police report of the July 8 incident; and an unsworn but signed statement from Mr. Cudmore's primary care physician that "[t]his patient suffers from significant and worsening Alzheimer's Type Dementia." CP at 296. The doctor's statement described Mr. Cudmore as being treated, but "continu[ing] to deteriorate," and characterized his mental faculties as "in the 'moderate to severe' dementia category." *Id.*

3

Mr. Lamberson filed a petition for a full guardianship the next day, and obtained an ex parte order appointing C. Wayne May to serve as guardian ad litem.[3] On July 18, Mr. Bolliger filed a petition to have himself appointed as Mr. Cudmore's lawyer in the guardianship proceeding and filed a notice of appearance in the action against Mr. Belt, stating he was appearing "on behalf of the above-referenced respondent, Gregg L. Belt— and the above-referenced alleged vulnerable adult, James Donald Cudmore." CP at 299.

On July 19, Judge Salvador Mendoza heard the petition for a protection order against Mr. Belt, followed by competing petitions to appoint a lawyer for Mr. Cudmore in the guardianship proceeding. Mr. May had petitioned the court to appoint Rachel Woodard to serve as Mr. Cudmore's lawyer. Judge Mendoza granted the request for a protective order prohibiting Mr. Belt from having contact with Mr. Cudmore for one

---

[3] We rely in some cases on adjudicative facts from the guardianship proceeding, *In re Cudmore*, cause no. 13-4-00260-9 (Benton County Super. Ct., Wash.). Under ER 201(c), courts may take judicial notice of adjudicative facts, whether requested to or not. A distinction is made between consulting the record of another case to determine whether it *contains* something and consulting the record of another case to determine whether disputed facts were or were not found to be true. 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 201.9 (5th ed. 2007). In this case, the relevance of the judicially noticed developments in the guardianship proceeding is not to rely on any trial court decision for its correctness (an appeal of trial court actions taken in the guardianship proceeding is separately pending) but only for the fact that relevant developments occurred.

year.[4] He appointed Ms. Woodard as Mr. Cudmore's lawyer, adding a handwritten notation to his order that "John Bolliger's motion for appointment as Mr. Cudmore's counsel is denied." Order Appointing Att'y for Allegedly Incapacitated Person, *In re Cudmore*, cause no. 13-4-00260-9 (Benton County Super. Ct., Wash. July 19, 2013).

Mr. Bolliger filed a motion for reconsideration of the protection order against Mr. Belt, asking the trial court to allow Mr. Cudmore to appear and express his opposition to the order. On August 12, the trial court entered an order stating that its previous order "shall remain in effect," but adding,

> The Court HEREBY[ r]eserves on the issue of reconsideration until such time that an evidentiary hearing can be held to address whether Mr. Cudmore is unable, due to incapacity, undue influence, or duress, to protect his person or estate in connection with the issues raise[d] in the petition.

CP at 383.

The hearing on whether to appoint a guardian for Mr. Cudmore was heard on December 27, 2013. At the conclusion of the hearing, Judge Mendoza found Mr. Cudmore to be incapable of handling his personal and financial affairs and appointed Mr. Lamberson as full guardian of Mr. Cudmore's person and estate.

On January 27, 2014, Mr. Bolliger filed a notice of his intent to withdraw from representing Mr. Cudmore in the action against Mr. Belt. On the same day, and on behalf

---

[4] Mr. Bolliger makes passing argument on appeal about whether Judge Mendoza's decision was based on inadmissible evidence, but the rules of evidence need not be applied in protection order proceedings under chapter 74.34 RCW. ER 1101(c)(4).

of his remaining client, Mr. Belt, Mr. Bolliger wrote to Judge Mendoza, asking that he conduct the hearing contemplated when he reserved ruling on Mr. Belt's motion for reconsideration the prior August. Judge Mendoza responded the following week, indicating that the issues raised by Mr. Bolliger had been addressed through his decision in the guardianship proceeding and adding, "No further proceedings are necessary unless [Mr. May or Ms. Woodard] feel a hearing is necessary." CP at 314. On February 20, 2014, Judge Mendoza entered a written order denying the motion for reconsideration.

On March 13, 2014, Mr. Bolliger filed a notice of appeal on behalf of Mr. Belt.

The following month, Mr. Lamberson moved to disqualify Mr. Bolliger from representing Mr. Belt in the Belt appeal, arguing that in light of Mr. Bolliger's prior representation of Mr. Cudmore, he had a conflict of interest. Mot. to Disqualify Att'y John C. Bolliger as Counsel for Appellant, *In re Cudmore*, case no. 32327-7-III (Wash. Ct. App. April 17, 2014). Our commissioner remanded the motion for fact finding by the trial court. Comm'r's Ruling, case no. 32327-7-III, at 1 (Wash. Ct. App. June 30, 2014).

On remand, Judge Cameron Mitchell disqualified Mr. Bolliger from representing Mr. Belt on appeal. Mr. Bolliger's motion for reconsideration of the court's order disqualifying him was denied. Mr. Bolliger timely filed a notice of appeal of the disqualification order on *his own* behalf, which was opened under the present cause number.

6

Meanwhile, in the Belt appeal, attorney Arthur Klym appeared on behalf of Mr. Belt on March 9, 2015. On April 15, 2015, lawyers for the parties to that appeal filed a stipulation to vacate the order of protection against Mr. Belt. On May 4, 2015, the lawyers filed a joint motion to withdraw the appeal and for entry of mandate. This court's mandate in the Belt appeal issued on May 7, 2015.

## ANALYSIS

A threshold, court-initiated motion to determine whether any viable issue is presented by this appeal was resolved by one of our commissioners. The commissioner determined that a lawyer is an aggrieved party if a formal finding of misconduct by a trial court may stigmatize the lawyer among his colleagues, potentially have a serious detrimental effect on his career, or be viewed as final and binding in disciplinary proceedings. Comm'r's Ruling, case no. 33193-8-III, at 3 (Wash. Ct. App. June 15, 2015) (citing *United States v. Talao*, 222 F.3d 1133 (9th Cir. 2000)). This appeal was permitted to proceed.

RPC 1.16 generally requires withdrawal if a lawyer's representation of a client will result in violation of the Rules of Professional Conduct or other law. *In re Marriage of Wixom*, 182 Wn. App. 881, 897-98, 332 P.3d 1063 (2014), *review denied*, 353 P.3d 632 (2015) (citing *State v. Rooks*, 130 Wn. App. 787, 799, 125 P.3d 192 (2005)). Where an attorney declines to withdraw, the court may disqualify him or her. *See Wixom*, 182 Wn. App. at 904-05.

7

"Whether circumstances demonstrate a conflict under ethical rules is a question of law we review de novo." *RWR Mgmt., Inc. v. Citizens Realty Co.*, 133 Wn. App. 265, 279, 135 P.3d 955, (2006) (citing *State v. Vicuna*, 119 Wn. App. 26, 30-31, 79 P.3d 1 (2003)). Determining the *proper resolution* where a conflict is present requires the exercise of discretion, implicating the abuse of discretion standard. *Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co.*, 124 Wn.2d 789, 812, 881 P.2d 1020 (1994). The posture of this case requires only review, as a matter of law, of any formal finding of misconduct.

In briefing filed after he was allowed to proceed with the appeal, Mr. Bolliger makes three assignments of error. He contends first, that the motion to disqualify him was untimely and the issue of a conflict was thereby waived; second, that his continued representation of Mr. Belt would not have violated RPC 1.7 or 1.9; and third, that the trial court erred in failing to apply the guardianship doctrine of substituted judgment. The arguments advanced by Mr. Bolliger's brief revive the question of whether any viable issue remains, since the Belt appeal was dismissed a year ago. After initially conferring on the appeal, this panel invited the parties to address why the issues raised on appeal by Mr. Bolliger are not moot.

A case is moot if a court can no longer provide effective relief. *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984). Generally, courts should dismiss cases that involve only moot questions. *Client A v. Yoshinaka*, 128 Wn. App. 833, 841,

8

116 P.3d 1081 (2005).[5] This court may raise the issue of mootness sua sponte. *See In re Det. of C. W.*, 105 Wn. App. 718, 723, 20 P.3d 1052 (2001), *aff'd*, 147 Wn.2d 259, 53 P.3d 979 (2002).

It no longer matters whether delay in bringing the disqualification motion or some implication of the doctrine of substituted judgment would have supported Mr. Bolliger's continued representation of Mr. Belt. Mr. Belt doesn't need further representation. *Cf. RWR Mgmt.*, 133 Wn. App. at 280 (declining to consider challenge to disqualification order that became moot after able substitute counsel tried the matter to completion).

At most, consistent with the reasoning on which our commissioner allowed the appeal to proceed, Mr. Bolliger has a concern that he will be stigmatized or prejudiced by a finding that he committed an ethical violation. *Cf.* Washington Rules for Enforcement of Lawyer Conduct (ELC) 10.1(a) (during disciplinary proceedings, "either party may move at any time for an order determining the collateral estoppel effect of a judgment in another proceeding.")

The only conflict issue properly before the trial court in connection with the disqualification motion was whether by representing Mr. Belt after that representation was challenged in April 2014, Mr. Bolliger violated RPC 1.9(a) and 1.16. The issue is

---

[5] An exception to the general rule that we dismiss moot cases exists when a moot issue presents matters that are of substantial and continuing interest. *In re Marriage of Horner*, 151 Wn.2d 884, 891-92, 93 P.3d 124 (2004).

whether he was representing Mr. Belt in a substantially related matter in which Mr. Belt's interests were materially adverse to those of Mr. Bolliger's former client, Mr. Cudmore, whose informed consent (or, in light of the guardianship, Mr. Lamberson's informed consent) had not been obtained. Mr. Lamberson's motion also complained of an earlier conflict of interest when, in July 2013, Mr. Bolliger represented both clients, but Mr. Lamberson did not move to disqualify Mr. Bolliger from representing Mr. Belt until more than a year later. It was only the circumstances that existed at the time of the disqualification motion (or thereafter) that were of legitimate concern in deciding the motion. The trial court's findings referring to an earlier concurrent conflict were not relevant to the motion or the court's decision and will not be considered further.[6]

While Mr. Bolliger has failed to assign error to any of the trial court's findings of fact in ordering disqualification, it is evident from his argument that he challenges the

---

[6] Mr. Bolliger's briefing discloses that a disciplinary complaint is pending before the Washington State Bar Association that may include allegations of conflicts of interest during earlier periods. That issue will have to be decided on the basis of evidence presented in that forum, because any findings and conclusions on that issue in the trial court were in the nature of advisory opinions. While collateral estoppel precludes re-litigation of the same issue in a subsequent action involving the parties, one of its essential elements is that the identical issue *necessarily* was decided. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306-07, 96 P.3d 957 (2004). Any earlier concurrent conflict of interest was not *necessarily* at issue in deciding the disqualification motion.

trial court's implicit finding of a violation of RPC 1.9.[7] Such a finding is implicit in the trial court's sixth finding of fact, its fifth and eighth conclusions of law, and its decision disqualifying Mr. Bolliger.

RPC 1.9(a) provides:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Mr. Bolliger proceeds from the position that Mr. Lamberson's petition for an order of protection against Mr. Belt was reasonably objectionable to *both* Mr. Cudmore and Mr. Belt: that Mr. Cudmore was mentally competent at all relevant times, that Mr. Cudmore liked Mr. Belt and appreciated his assistance, and that no reasonable lawyer in Mr. Bolliger's position would have perceived the two men's interests as being materially adverse. If undisputed evidence bore out those facts at the time Mr. Bolliger's representation was challenged, his point would be a legitimate one—it is only if a current client's interests are materially adverse to those of the former client that the rule requires obtaining informed consent, confirmed in writing.

---

[7] Under the Rules on Appeal, findings of fact to which error is not assigned are verities on appeal. RAP 10.3(g); *State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994). We may excuse Mr. Bolliger's technical violation because his briefing makes this challenge sufficiently clear. *See Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 709-10, 592 P.2d 631 (1979) (technical violations may be excused in appropriate circumstances).

11

But by the time of Mr. Lamberson's disqualification motion (and for that matter, at all times after the court appointed Mr. Lamberson as full guardian of the person and estate of Mr. Cudmore) undisputed evidence did not bear out Mr. Bolliger's position that the interests of his current and former client were the same. To the contrary; the trial court had determined in December 2013 that Mr. Cudmore was incapable of handling his personal or financial affairs and that all of the estate planning documents that Mr. Cudmore signed when driven to Mr. Bolliger's office by Mr. Belt were invalid. In February 2014, the court had denied reconsideration of the protection order against Mr. Belt on the basis of those findings. Mr. Bolliger could not close his eyes to those determinations. In light of those determinations, no reasonable attorney could conclude that he could represent Mr. Belt without first obtaining the informed consent of Mr. Cudmore's guardian, confirmed in writing.

And in reaching this conclusion, it does not matter that Mr. Bolliger believes errors were also made in the guardianship action, which are the subject of a separately pending appeal. Until and unless the trial court's orders in the guardianship proceeding are reversed, Mr. Bolliger is required to heed them. The following observation, while made before adoption of our current disciplinary rules, still obtains:

> "Although it is both the right and duty of a lawyer to protest vigorously rulings on evidence or procedure or statements in the judge's charge which he deems erroneous, nevertheless, when the ruling has been finally made, the lawyer must, for the time being, accept it and invoke his remedy by appeal to the higher court."

12

No. 33193-8-III
*In re the Matter of Cudmore v. Belt*

*Dike v. Dike*, 75 Wn.2d 1, 7, 448 P.2d 490 (1968) (quoting HENRY S. DRINKER, LEGAL

ETHICS 69 (1953)).

We therefore affirm the trial court's implicit finding in January 2015 that since

Mr. Bolliger had not obtained Mr. Lamberson's informed consent to his representation of

Mr. Belt, confirmed in writing, his representation of Mr. Belt violated RPC 1.9.

Mr. Bolliger's remaining assignments of error are dismissed as moot.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____        _____
Korsmo, J.                                          Pennell, J.

13